1 | EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (SBN 264863)
2 | ianshelton@eversheds-sutherland.com
500 Capitol Mall, Suite 1750
3 | Sacramento, CA 95814
Telephone:  (916) 844-2965
4 | Facsimile:   (916) 241-0501

5

6 | EVERSHEDS SUTHERLAND (US) LLP     SERGENIAN ASHBY LLP
Ronald W. Zdrojeski (*PHV* forthcoming)   Joseph R, Ashby (SBN 248579)
7 | ronzdrojeski@eversheds-sutherland.com   joseph@sergenianashby.com
1114 6th Avenue, 40th Floor               1055 West Seventh Street, 33rd Floor
8 | New York, NY 10036                    Los Angeles, CA 90017
Telephone:  (212) 389-5000            Telephone:  (323) 318-7771
9 | Facsimile:   (212) 389-5099

10 | Attorneys for Defendants Boohoo Group PLC,
Boohoo.com USA Inc., Prettylittlething.com
11 | USA Inc., and Nastygal.com USA Inc.

12 |                    UNITED STATES DISTRICT COURT

13 |                    CENTRAL DISTRICT OF CALIFORNIA

14

15 | FARID KHAN, an individual, on behalf     CASE NO. 2:20-cv-03332-GW-JEM
of himself and all others similarly
16 | situated,                               The Honorable George H. Wu

17 |           Plaintiff,                     **NOTICE OF MOTION AND
MOTION TO DISMISS AND
18 |    vs.                                   STRIKE ALLEGATIONS IN THE
SECOND AMENDED COMPLAINT
19 | BOOHOO.COM USA INC. a Delaware          BY DEFENDANTS BOOHOO.COM
corporation, BOOHOO.COM UK               USA INC. AND BOOHOO GROUP
20 | LIMITED, a United Kingdom private        PLC**
limited company, BOOHOO GROUP
21 | PLC, a Jersey public limited company ,
and DOES 1-100, inclusive,
22 |                                          Hearing Date:    November 2, 2020
           Defendants.                       Hearing Time     8:30 a.m.
23

24 |                                          Courtroom: 9D
25 |                                          Address:     U.S. Courthouse
350 W. First Street
26 |                                                       Los Angeles, CA 90012
27

28

MOTION TO DISMISS AND STRIKE

| | | |
|---|---|---|
| 1 | HAYA HILTON, an individual, on behalf of herself and all others similarly situated, | CASE NO. 2:20-cv-04658-GW-JEM |
| 2 | | |
| 3 | Plaintiff, | The Honorable George H. Wu |
| 4 | vs. | **NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT BY DEFENDANTS PRETTYLITTLETHING.COM USA INC. AND BOOHOO GROUP PLC** |
| 5 | PRETTYLITTLETHING.COM USA INC. a Delaware corporation, PRETTYLITTLETHING.COM LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company , and DOES 1-100, inclusive, | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | Defendants. | Hearing Date: November 2, 2020 |
| 10 | | Hearing Time 8:30 a.m. |
| 11 | | Courtroom: 9D |
| 12 | | Address: U.S. Courthouse |
| 13 | | 350 W. First Street |
| | | Los Angeles, CA 90012 |
| 14 | | |
| 15 | OLIVIA LEE, an individual, on behalf of herself and all others similarly situated, | CASE NO. 2:20-cv-04659-GW-JEM |
| 16 | | The Honorable George H. Wu |
| 17 | Plaintiff, | |
| 18 | vs. | **NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT BY DEFENDANTS NASTYGAL.COM USA INC. AND BOOHOO GROUP PLC** |
| 19 | NASTYGAL.COM USA INC. a Delaware corporation, NASTY GAL LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company , and DOES 1-100, inclusive, | |
| 20 | | |
| 21 | | |
| 22 | Defendants. | Hearing Date: November 2, 2020 |
| 23 | | Hearing Time 8:30 a.m. |
| 24 | | |
| 25 | | Courtroom: 9D |
| 26 | | Address: U.S. Courthouse |
| | | 350 W. First Street |
| 27 | | Los Angeles, CA 90012 |
| 28 | | |

MOTION TO DISMISS AND STRIKE

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 2, 2020, at 8:30 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at Courtroom 9D, U.S. Courthouse, 350 W. First Street, Los Angeles, California 90012, Defendants Boohoo Group PLC ("Boohoo Parent"), Boohoo.com USA Inc. ("Boohoo USA"), Prettylittlething.com USA Inc. ("PLT USA"), and Nastygal.com USA Inc. ("NG USA") (Boohoo USA, PLT USA, and NG USA are collectively referred to as "US Defendants"), will move this Court to dismiss the claims and strike certain allegations in Plaintiffs' Second Amended Class Action Complaint in the *Khan* Action, Case No. 2:20-cv-03332 ("Kahn SAC"), the First Amended Class Action Complaint in the *Hilton* Action, Case No. 2:20-cv-04658 ("Hilton FAC"), and the First Amended Class Action Complaint in the *Lee* Action, Case No. 2:20-cv-04659 ("Lee FAC").

Because the allegations in the three complaints are substantially similar and suffer from the same pleading deficiencies, Boohoo Parent and the US Defendants have filed identical versions of the present motion in all three cases.  The moving parties for purposes of this motion do *not* include Defendants Boohoo.com UK Limited ("Boohoo UK"), Prettylittlething.com Limited ("PLT UK"), and Nasty Gal Limited ("NG UK") (collectively, "UK Defendants"), whose responsive pleading is due on September 14, 2020 pursuant to a stipulation and order.

Plaintiffs sued Boohoo Parent and the US Defendants for the same six counts in all three cases:  (1) violation of California's Unfair Competition Law ("UCL"); (2) violation of California's False Advertising Law ("FAL"); (3) violation of California's Consumer Legal Remedies Act ("CLRA"); (4) fraud; (5) fraudulent concealment; and (6) unjust enrichment. Hilton FAC ¶¶ 72-128, Kahn SAC ¶¶ 75-131, Lee FAC ¶¶ 85-141.  Plaintiffs' claims are directed solely to the online advertising on the Boohoo, Pretty Little Thing, and Nasty Gal websites.

Plaintiffs generally allege that these websites advertise "inflated reference or original prices to deceive customers into a false belief that the sale price is a deeply discounted bargain price." Hilton FAC ¶ 1; *see also* Kahn SAC ¶ 1; Lee FAC ¶ 1. Plaintiffs do *not* allege that Defendants failed to ship the products, that the products received were not as represented, or that Plaintiffs lost any money.

This is not surprising given the prices that Plaintiffs paid for the handful of products they purchased. Lee bought one pair of shoes for $24. Lee FAC ¶ 19. Khan bought three polo shirts for $18 each, two polo shirts for $14 each, and seven t-shirts for $6 each. Khan SAC ¶ 20. Hilton bought six pairs of pants for between $14 and $22.50 each, and one shirt for $14. Hilton SAC ¶ 21. Despite claiming he "fell victim to the deception" of Boohoo's "50% Off Everything" advertising, for example, Khan does not allege that he is out-of-pocket anything, *e.g.*, that his $6 t-shirts were worth less than the rock-bottom price he paid for them. Khan SAC ¶ 22.

**First**, the Court should grant the motion to dismiss because Plaintiffs have sued the wrong parties. As reflected in the Terms & Conditions ("T&Cs") of the three websites, the UK Defendants operate the websites and are responsible for their advertising, not Boohoo Parent or the US Defendants. Shelton Decl Exs. 1-3, 8-10, § 1. After Defendants brought this fatal defect to Plaintiffs' attention during the meet and confer process, Plaintiffs amended their complaints to add the UK Defendants. Plaintiffs did not utilize the information to withdraw their claims for lack of factual support, nor did they make new allegations. Instead of dropping Boohoo Parent and the US Defendants, they retained those entities and added a set of conclusory alter ego allegations without a factual basis. Plaintiffs do not plausibly allege that Boohoo Parent and the US Defendants are responsible for advertising on websites they do not operate.

**Second**, the Court does not have personal jurisdiction over Boohoo Parent— an entity at the apex of the corporate hierarchy incorporated in Jersey, Channel

MOTION TO DISMISS AND STRIKE

Islands.  It is black letter law that a corporate parent is not liable for the actions of its subsidiaries.  The Court should reject Plaintiffs' "shoot first, ask questions later" approach where they indiscriminately sue every entity in the corporate structure.

*Third*, the Court should strike the non-California class allegations.  Plaintiffs plead that the three class representatives are California residents who bought a handful of items on the websites in late 2019 or early 2020.  Hilton FAC ¶¶ 2, 21; Kahn SAC ¶¶ 2, 20; Lee FAC ¶¶ 2, 19.  Yet Plaintiffs purport to bring six *California* claims on behalf of *every* customer in the *United States*, based on *every* product sold on the website, over the past *four years*.  The non-California class allegations fail as a matter of law because there are no non-California class representatives.  Even assuming there were, such hypothetical foreign plaintiffs would not have the requisite contacts with California to assert California claims, in violation of the presumption against extraterritorial application of California law and due process.  As to Boohoo Parent, the Court lacks personal jurisdiction to preside over non-California class claims that could not be brought on an individual basis in California.

*Fourth*, the Court should strike the class allegations regarding products that Plaintiffs never purchased.  For example, although she only bought one $24-pair of shoes on the NG website, Lee seeks to serve as a class representative for claims covering every product sold on the NG website to every customer in the United States over the past four years.  Hilton bought seven items, and Khan bought twelve items (seven of Khan's items were the same $6 t-shirt).  Plaintiffs do not have standing to assert claims related to products they never purchased and online advertising they never saw or relied upon.

*Fifth*, the Court should dismiss all claims for failure to state a claim for the reasons described below.  Despite meeting and conferring on these pleading deficiencies, Plaintiffs declined Defendants' suggestion to amend to add claims

and/or parties in the future if discovery reveals a factually plausible basis for such amendments.

Boohoo Parent and the US Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(f), and/or 12(b)(6) on the following grounds:

- Dismiss all claims against Boohoo Parent because the Court lacks personal jurisdiction over this Jersey entity, Boohoo Parent is not liable for the actions of its subsidiaries, and Plaintiffs' alter ego allegations are not plausible.

- Dismiss all claims against Boohoo Parent and the US Defendants because Plaintiffs do not plausibly allege that the Defendants are liable for advertising on websites they do not operate.

- Dismiss and/or strike all non-California class allegations against Boohoo Parent and the US Defendants because there are no non-California class representatives, such hypothetical foreign class representatives would not have the requisite contacts with California to assert California claims, and as to Boohoo Parent, the Court lacks personal jurisdiction to preside over non-California class claims.

- Dismiss all claims for lack of standing because Plaintiffs cannot serve as class representatives for products they never purchased and advertising they never saw or relied upon, and Plaintiffs do not plausibly allege that they lost any money or property by virtue of the alleged false advertising.

- Dismiss the CLRA claim because the CLRA notices failed to comply with statutory notice requirements.

- Dismiss all claims for failure to allege the fraud with the particularity required by Fed. R. Civ. P. 9(b).

- Dismiss the fraudulent concealment claim for failure to plausibly allege the elements of such a claim, including a special relationship or duty.

- Dismiss the unjust enrichment claim for failure to plausibly allege the elements of such claim, including the receipt of any benefit.

This motion is being made following the conference of counsel, pursuant to L.R. 7-3, via telephone on July 15 and August 26, 2020, and via email on July 16 and August 28, 2020. During the course of two telephonic conferences, the parties met and conferred for over an hour, and Defendants followed up those conversations with two emails describing the arguments raised in the present motion. The parties were unable to resolve these issues despite their good faith efforts.

This Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the Declarations of Neil Catto and Ian Shelton; the pleadings and other papers on file in this action; and such argument as may be presented before or at the hearing.


DATED:   September 4, 2020          EVERSHEDS SUTHERLAND (US) LLP


By */s/ Ian S. Shelton*
Ian S. Shelton

Attorneys for Defendants Boohoo Group PLC, Boohoo.com USA Inc., Prettylittlething.com USA Inc., and Nastygal.com USA Inc.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

FACTUAL BACKGROUND ....................................................................................1

ARGUMENT............................................................................................................5

I.  THE COURT SHOULD DISMISS THE CLAIMS ASSERTED
    AGAINST THE WRONG PARTIES.....................................................5

    A.  Legal Standard ...........................................................................5

    B.  The Court Does Not Have Personal Jurisdiction over Boohoo
        Group PLC ...................................................................................7

    C.  The Court Does Not Have Personal Jurisdiction over Boohoo
        Group PLC Based on an Alter Ego Theory ...............................9

    D.  Plaintiffs Fail to Plausibly Allege Claims Against the US
        Defendants that Do Not Operate the Websites ......................13

II.  THE COURT SHOULD STRIKE THE NON-CALIFORNIA CLASS
     ALLEGATIONS....................................................................................14

    A.  Legal Standard ...........................................................................14

    B.  The California Class Representatives Cannot Assert Claims on
        Behalf of Non-California Customers.......................................15

    C.  The California Class Representatives Cannot Assert Claims on
        Behalf of Non-California Customers against Boohoo Parent or
        the US Defendants ....................................................................18

III.  THE COURT SHOULD DISMISS FOR FAILURE TO STATE A
      CLAIM .................................................................................................19

    A.  The Court Should Dismiss All Claims for Lack of Standing...............19

    B.  The Court Should Dismiss the CLRA Claims because the Pre-
        Suit Notices Were Deficient......................................................20

    C.  The Court Should Dismiss All Claims for Failure to Satisfy
        Federal Rule of Civil Procedure 9(b) .....................................21

    D.  The Court Should Dismiss the Fraudulent Concealment Claims .........23

    E.  The Court Should Dismiss the Unjust Enrichment Claims .................23

CONCLUSION .....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Allan & Assocs. Ltd.*,
  No. 5:19-CV-8372-EJD, 2020 WL 1492665 (N.D. Cal. Mar. 27,
  2020) ...............................................................................................................12

*Arris Cable Modem Consumer Litig.*,
  No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ................25

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017)...........................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................7

*Brandon Banks v. Nissan N. Am.*, Inc.,
  No. C 11-2022 PJH, 2012 WL 8969415 (N.D. Cal. Mar. 20, 2012) ..................17

*Bristol-Myers Squibb Co. v. Superior Court of Cal*,
  137 S. Ct. 1773 (2017) .....................................................................................18

*Bruce v. Harley-Davidson, Inc.*
  No. CV 09-6588 CAS, 2010 WL 3521775 (C.D. Cal. Jan. 15, 2010)................21

*Carpenter v. PetSmart, Inc.*,
  441 F. Supp. 3d 1028 (S.D. Cal. 2020) ................................................16, 18, 19

*Chowning v. Kohl's Dep't Stores, Inc.*,
  733 F. App'x 404 (9th Cir. 2018).....................................................................20

*Churchill Vill., LLC v. Gen. Elec. Co.*,
  169 F.Supp.2d 1119 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir.
  2004) .................................................................................................................15

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016)..............................................................11

*Cover v. Windsor Surry Co.*,
  No. 14-cv-05262-WHO2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ................18

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*,
   No. 12-10876-CAS, 2013 WL 1249021 (C.D. Cal. Mar. 25, 2013)....................24

*Daimler AG v. Bauman*,
   134 S.Ct. 746 (2014)...............................................................................8, 9

*Davis v. Chase Bank U.S.A., N.A.*,
   650 F. Supp. 2d 1073 (C.D. Cal. 2009) ...............................................21

*Davison v. Kia Motors Am., Inc.*,
   No. SACV 15–00239–CJC(RNBx), 2015 WL 3970502 (C.D. Cal.
   June 29, 2015).....................................................................................17

*Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...............................................16

*Doe I v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) ..............................................................24

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ..................................................6, 10, 13

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016)..............................................................24

*GCN Prod., Inc. v. O'Young*,
   22 F. App'x 772 (9th Cir. 2001)............................................................23

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)..............................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846 (2011) ...........................................................................6

*Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003).........................................................8, 10

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013)..............................................................20

*Ivie v. Kraft Foods Global, Inc.*,
   No. 12-02554, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013)..............................19

MOTION TO DISMISS AND STRIKE

*Johns v. Bayer Corp.*,
  No. 09-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ............................ 19, 20

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)................................................................22

*Kellman v. Whole Foods Mkt., Inc.*,
  313 F. Supp. 3d 1031 (N.D. Cal. 2018)..................................................12

*Koehler v. Litehouse, Inc.*,
  No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012).................16

*Larsen v. Trader Joe's Co.*,
  No. 11-06188, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ..........................19

*Learjet, Inc. v. Oneok, Inc.*,
  715 F.3d 716 (9th Cir. 2013).................................................................8

*Leonhart v. Nature's Path Foods, Inc.*,
  No. 13-0492, 2014 WL 1338161 (N.D. Cal. Mar. 31, 2014) .............................19

*Levine v. Blue Shield of Cal.*,
  189 Cal.App.4th 1117 (2010)..............................................................23

*Littlehale v. Hain Celestial Grp., Inc.*,
  No. C 11-6342 PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012) .....................17

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011)................................................................6

*Mazza v. American Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)...............................................................17

*McGeachy v. Pinto Valley Mining Corp.*,
  No. 2:16-CV-03348 JWS, 2017 WL 3130639 (D. Ariz. July 24,
  2017) ............................................................................................11

*Morales v. Unilever U.S., Inc.*,
  No. 2:13-2213 WBS EFB, 2014 WL 1389613 (E.D. Cal. Apr. 9,
  2014) ............................................................................................16

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009).................................................................7

MOTION TO DISMISS AND STRIKE

*Patel v. Parnes*,
   253 F.R.D. 531 (C.D. Cal. 2008) ........................................................13

*Perez v. Nidek*,
   711 F.3d 1109 (9th Cir. 2013)..............................................................18

*Philo v. Liminova, Inc.*,
   No. 13CV113-AJB WVG, 2013 WL 1628153 (S.D. Cal. Apr. 15,
   2013) .....................................................................................................23

*Pilgrim v. Gen. Motors Co.*,
   408 F. Supp. 3d 1160 (C.D. Cal. 2019) ...............................................19

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013)..................................................23

*Pokemon Co. Int'l, Inc. v. Shopify, Inc.*,
   No. 16-MC-80272-KAW, 2017 WL 697520 (N.D. Cal. Feb. 22,
   2017) .....................................................................................................11

*Puri v. Khalsa*,
   674 F. App'x 679 (9th Cir. 2017).........................................................25

*Quezada v. Loan Ctr. of California, Inc.*,
   No. CIV. 2:0800177WBSKJM, 2009 WL 5113506 (E.D. Cal. Dec.
   18, 2009).................................................................................................23

*Rael v. New York & Co., Inc.*,
   No. 16-CV-369-BAS(JMA), 2016 WL 7655247 (S.D. Cal. Dec. 28,
   2016) ...............................................................................................17, 22

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015).......................................... 8, 9, 10, 11

*Rheem Mfg. Co. v. U.S.*,
   57 Cal. 2d 621 (1962) ...........................................................................24

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016).................................................24

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009)..................................................14

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014)....................................................................15

*Schertzer v. Samsonite Co. Stores, LLC*,
    No. 19-CV-639 JLS (MSB), 2020 WL 4281990 (S.D. Cal. Feb. 25,
    2020) ....................................................................................................................22

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010)...............................................................................7

*Skurkis v. Montelongo*,
    No. 16-cv-0972, 2016 WL 4719271 (N.D. Cal. Sept. 9, 2016)...........................9

*Sotelo v. Rawlings Sporting Goods Co., Inc.*,
    2019 WL 4392528 (C.D. Cal. May 8, 2019) ......................................................21

*United States v. Bennett*,
    621 F.3d 1131 (9th Cir. 2010)...............................................................................9

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).............................................................................22

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017)...............................................................................9

*Wilson v. Frito-Lay N.A., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013)..............................................................19

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018)................................................................18

*Ziegler v. Indian River Cty.*,
    64 F.3d 470 (9th Cir. 1995)...................................................................................6

**Statutes**

Cal. Bus. & Prof. Code § 17200..............................................................................5

Cal. Bus. & Prof. Code § 17500..............................................................................5

Cal. Bus. & Prof. Code § 17204............................................................................20

Cal. Bus. & Prof. Code § 17535............................................................................20

Cal. Civ. Code § 1750..............................................................................................5

MOTION TO DISMISS AND STRIKE

Cal. Civ. Code § 1782 .......................................................................20, 21

Cal. Civ. Proc. Code § 410.10 .......................................................................6

MOTION TO DISMISS AND STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

## FACTUAL BACKGROUND

Plaintiffs purport to represent nationwide classes of customers who purchased items from three websites: (1) us.boohoo.com, Case No. 20-cv-03332, ECF No. 14, Kahn Second Amended Complaint ("Kahn SAC") ¶ 1; (2) prettylittlething.us, Case No. 2:20-cv-04658, ECF No. 15 Hilton First Amended Complaint ("Hilton FAC") ¶ 1, and (3) nastygal.com, Case No. 2:20-cv-04659, ECF No. 15, Lee First Amended Complaint ("Lee FAC") ¶ 1.

**Purchases.** Farid Kahn allegedly bought twelve items from Boohoo's U.S. website on April 27, 2019. Kahn SAC ¶ 20. Each item was priced between $6 and $18 dollars, for a total of $150.20. *Id.* ¶ 20, 22. Kahn bought three polo shirts for $18 each, two polo shirts for $14 each, and seven t-shirts for $6 each. *Id.* ¶ 20.

Haya Hilton allegedly bought seven items from Pretty Little Thing's U.S. website on February 22, 2020. Hilton FAC ¶ 21. Each item was priced between $19.00 and $22.50, for a total of $148.84. *Id.* ¶ 23. Hilton bought two pairs of pants for $22.50 each, one pair of pants for $20, two pairs of pants for $19 each, one pair of pants for $14, and one top for $14. *Id.* ¶ 21.

Olivia Lee allegedly bought one pair of shoes from Nasty Gal's U.S. website on November 10, 2019 for $24. Lee FAC ¶¶ 19-21.

**Advertising Allegations.** None of the Plaintiffs allege that Defendants failed to deliver the items purchased, or that the items were not as represented. Rather Plaintiffs contend that Defendants engage in "false and deceptive pricing practices." Lee FAC ¶ 1, Kahn SAC ¶ 1, Hilton FAC ¶ 1. Kahn and Hilton complain that when they checked out of the Boohoo and Pretty Little Thing websites, respectively, each of the items they purchased was displayed "as having a Reference Price and a sale price of 50% off." Hilton FAC ¶ 21, Kahn SAC ¶ 20. They allege that, after browsing the websites, the products offered each had a "Reference Price" that was

crossed out and "a sale price that was 50% off" of the crossed-out Reference Price. *Id.*  For example, Kahn's t-shirts were displayed as having a Reference Price of $12 and a sale price of $6. Kahn FAC ¶ 20.  While Plaintiffs allege that the Reference Price was "crossed-out," they do not allege that there was any text in the advertising describing the meaning of the Reference Price.  *See id.*

Lee complains that when she checked out of the Nasty Gal website, the pair of shoes she purchased was displayed as having a "Reference Price and a sale price of 60% off." Lee FAC ¶ 19.  For example, Lee's shoes were displayed as having a Reference Price of $60 and a sale price of $24. *Id.*  Kahn, Hilton, and Lee generally allege that they "fell victim" to "false advertising and deceptive practices."  Hilton FAC ¶ 21, Kahn SAC ¶ 20, Lee FAC ¶ 19.

**Terms & Conditions.**  The Terms & Conditions ("T&Cs") are displayed on the websites along with the advertising that is the subject of the complaints.  The T&C's identify Boohoo UK as the operator of the website us.boohoo.com, PLT UK as the operator of prettylittlething.us, and NG UK as the operator of nastygal.com (collectively, "UK Defendants").[1]  Shelton Decl. Exs. 1-3, 8-10 § 1. Boohoo Parent and the US Defendants are *not* listed as operators of the websites.  *See id.*

**Corporate Structure.**  Boohoo Group PLC ("Boohoo Parent") is a public limited company incorporated and domiciled in the Bailiwick of Jersey ("Jersey"), which is a British Crown dependency located near the coast of Normandy, France.  Catto Decl. ¶ 2.  Boohoo Parent is the top-level holding company.  *Id.* ¶ 6.  It does not directly engage in any trading activities.  *Id.*  The principal activity of its

---

[1] Exhibits 1-3 of the Shelton Declaration are the T&Cs as they appeared on the dates that Plaintiffs allegedly made their purchases.  Exhibits 8-10 are the current Boohoo T&Cs, *available at* https://us.boohoo.com/page/terms-and-conditions.html (last visited on September 4, 2020); Nasty Gal T&Cs, *available at* https://www.nastygal.com/customer-service#folder-cs-folder-legal (last visited on September 4, 2020); and Pretty Little Thing T&Cs, *available at* https://www.prettylittlething.us/terms (last visited on September 4, 2020).

subsidiaries relates to online retailing of clothing and fashion accessories.  *Id.* ¶¶ 6, 18.

Boohoo Parent owns 100% of Boohoo Holdings Limited ("Boohoo Holdings"), a limited company incorporated in the United Kingdom with its principal place of business in the United Kingdom.  *Id.* ¶ 17.  Boohoo Holdings is an intermediate holding company.  *Id.*  It does not directly engage in any trading activities.  *Id.*  Boohoo Parent owns 35.8% of Prettylittlething.com Limited ("PLT UK").

Boohoo Holdings owns (i) 100% of Boohoo.com UK Limited ("Boohoo UK") and NastyGal.com Limited ("NG UK"); and (ii) 64.2% of PLT UK, all of which are limited companies incorporated in the United Kingdom with their principal place of business in the United Kingdom.  *Id.* ¶ 18. *Id.* ¶ 19.

Boohoo UK owns 100% of Boohoo.com USA Inc. ("Boohoo US"), a Delaware corporation with its principal place of business in California.  *Id.* ¶ 20.  NG UK owns 100% of NastyGal.com USA Inc. ("NG US"), a Delaware corporation with its principal place of business in California.  *Id.* ¶ 21.  PLT UK owns 100% of PLT US, a Delaware corporation with its principal place of business in California.  *Id.* ¶ 22.

**Alter Ego Allegations.**  As explained above, the UK Defendants operate the three websites.  During the meet and confer process, Defendants brought this issue to the attention of Plaintiffs and requested that Plaintiffs drop Boohoo Parent and the US Defendants and name the proper UK Defendants.  While Plaintiffs agreed to amend their complaints, they added the UK Defendants but kept Boohoo Parent and the US Defendants as named defendants.

In order to justify naming corporate entities that do not operate the websites, Plaintiffs added boilerplate alter ego allegations to all three complaints.  *E.g.* Hilton FAC ¶¶ 7-9, 45-71; Kahn SAC ¶¶ 7-9, 45-74; Lee SAC ¶¶ 7-9, 44-84.  Most of the

alter ego allegations parrot legal standards with no facts at all; others allege facts on "information and belief" that are irrelevant or legally insignificant.

Plaintiffs allege on "information and belief" that Boohoo Parent, the UK Defendants, and the US Defendants "operate[] as one big company to market and sell products throughout the U.S.," and that "[t]he 'subsidiaries' operated like divisions or departments."  Hilton FAC ¶ 7; Kahn SAC ¶ 7; Lee FAC ¶ 7.  Plaintiffs do not allege any facts to support this conclusory statement.  *See id.*

Plaintiffs also allege that Boohoo Parent, the UK Defendants, and the US Defendants are "co-conspirators" and "aided and abetted" the "wrongful conduct" identified in the complaint.  *Id.* ¶¶ 8-9.  Plaintiffs do not allege any facts to support these allegations.  *See id.*

In a section of their complaints entitled "ALTER EGO AND AGENCY RELATIONSHIP BETWEEN THE DEFENDANTS," Plaintiffs allege nine to twelve paragraphs of generic alter ego allegations devoid of any facts.  Hilton FAC ¶¶ 45-50, 69-71; Kahn SAC ¶¶ 44-50, 70-74; Lee FAC ¶¶ 44-49; 80-84.  In addition to this boilerplate language, they allege the following: (1) Boohoo Parent wholly owns its subsidiaries (Lee FAC ¶ 51; Kahn SAC ¶ 52; Hilton FAC ¶ 52); (2) Boohoo Parent has made public statements promoting its various international brands (Hilton FAC ¶¶ 53-61; Kahn SAC ¶¶ 53- 59, 61; Lee FAC ¶¶ 52-60); (3) there are overlapping officers, directors, and addresses (Hilton FAC ¶¶ 62-67, 69; Kahn FAC ¶¶ 62-64, 71-72 Lee FAC ¶¶ 61-66, 80); (4) the US Defendants are involved in "marketing" (Hilton FAC ¶¶ 67-68; Kahn SAC ¶¶ 65-68; Lee FAC ¶¶ 67-71); (5) certain marketing and social media materials do not distinguish between the subsidiaries and refer to Boohoo, Pretty Little Thing, and Nasty Gal (Kahn SAC ¶¶ 69-70; Lee FAC  ¶¶ 72-74); and (6) there are financial obligations between Boohoo Parent and NG UK (Lee FAC ¶¶ 75-79).

**Class Action Allegations.**  Plaintiffs seek certification of a National Class,

MOTION TO DISMISS AND STRIKE

and alternatively, a California Class.  The National Class is defined as: "All persons in the United States of America who purchased one or more [Boohoo / PLT / NG] products from [the Boohoo / PLT / NG websites] between April 9, 2016, through the present (the 'Class Period') at a discount from a higher reference price and who have not received a refund or credit for their purchase(s)."  Hilton FAC ¶ 33; Khan SAC ¶ 33; Lee FAC ¶ 32.  The alternative California Class substitutes the "the State of California" for "the United States of America."  Hilton FAC ¶ 35; Kahn SAC ¶ 35; Lee FAC ¶ 34.

**Claims and Prayer for Relief.**  Plaintiffs bring claims for violations of (1) California's Unfair Competition Laws ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (2) California's False Advertising Law ("FAL"), *id.* § 17500 *et seq.*, (3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, (4) Fraud, (5) Fraudulent Concealment, and (6) Unjust Enrichment. Lee FAC ¶¶ 85-141, Kahn SAC ¶¶ 75-131, Hilton FAC ¶¶ 72-128.

Plaintiffs' UCL, FAL, and CLRA claims arise under California law.  In the prayer for relief, Plaintiffs seek recovery of attorney's fees under California law for their common law counts for fraud, fraudulent concealment, and unjust enrichment. Lee FAC, Kahn SAC, Hilton FAC, ¶ VIII.  Plaintiffs do not plead any claims under the substantive laws of states other than California.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS THE CLAIMS ASSERTED AGAINST THE WRONG PARTIES

### A.   Legal Standard

Boohoo Parent and the US Defendants seek dismissal because Plaintiffs sued the wrong parties.  As reflected in the T&Cs, the UK Defendants (whose responsive pleading is due on September 14, 2020) operate the websites at issue.  Shelton Decl. Exs. 1-3, 8-10 § 1.  They also enter into the sales contracts with U.S.-based

customers.  *Id.*, § 4.  Boohoo Parent seeks dismissal for lack of personal jurisdiction and for failure to state a claim, and the US Defendants seek dismissal for failure to state a claim.  As explained below, Ninth Circuit authority does not allow Plaintiffs to indiscriminately sue every entity in the corporate hierarchy.

When ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "[i]t is the plaintiff's burden to establish jurisdiction." *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995) (citation omitted).  If a defendant's affiliations are so "'continuous and systematic' as to render them essentially at home in the forum State," the Court may assert general jurisdiction over a defendant on matters unrelated to its contact in the state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  Specific jurisdiction is proper where the defendant's "contacts with the forum give rise to the cause of action before the court."  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  Whether the Court may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017) (quotation and citation omitted).  When adjudicating a motion to dismiss brought pursuant to Rule 12(b)(2), a court may consider evidence outside of the pleadings, including declarations submitted by the parties. *Unocal*, 248 F.3d at 922.  California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same.  *Mavrix Photo, Inc. v. Brand Techs., In*c., 647 F.3d 1218, 1223 (9th Cir. 2011).

The Court should grant a motion to dismiss for failure to state a claim under s Plaintiffs either fail to plead a "cognizable legal theory" or fail to plead "sufficient factual matter to state a facially plausible claim to relief."  Fed R. Civ. P. 12(b)(6); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)

(citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A claim is facially plausible when "the non-conclusory 'factual content,' and reasonable inferences from that content," are "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## B. The Court Does Not Have Personal Jurisdiction over Boohoo Group PLC

Boohoo Parent is incorporated and domiciled in Jersey, with its principal place of business in the United Kingdom. Catto Decl. ¶ 2. Its registered office address is 12 Castle Street, St. Helier, Jersey, JE2 3RT. *Id.* ¶ 3.

Boohoo Parent is a holding company. *Id.* ¶ 6. It has no offices in California. *Id.* ¶ 8. It has no directors, officers, or employees in California. *Id.* ¶ 9. It does not own any real estate or operate any stores in California. *Id.* ¶¶ 10-11. It does not design, manufacture, distribute, or sell any products or services in California. *Id.* ¶ 2. Boohoo Parent also is not responsible for the advertising on websites operated by its owned subsidiaries. *Id.* ¶¶ 13-15. Boohoo Parent itself does not operate the websites that are the subject matter of this lawsuit and it does not operate any websites that sell products or services to California residents. *See id.* Boohoo Parent does not directly engage in any trading activities, including in California. *Id.* ¶¶ 6, 8-15.

The only connection between Boohoo Parent and California is through the activities of its subsidiaries. *Id.* ¶ 16. Boohoo Parent, the top-level holding company, owns 100% of Boohoo Holdings, an intermediate holding company and 35.8% of Prettylittlething.com Limited. *Id.* ¶ 17. Boohoo Holdings, in turn, owns 100% of Boohoo UK and NG UK, and 64.2 of PLT UK (collectively, "UK Defendants"). *Id.* ¶¶ 18-19. The UK Defendants operate the websites that are the

subjects of these lawsuits.  Shelton Decl. Exs. 1-3, 8-10 § 1.

The Court does not have general jurisdiction over Boohoo Parent.  "[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, *i.e.*, comparable to a domestic enterprise in that State."  *Daimler AG v. Bauman*, 134 S.Ct. 746, 758 n. 11 (2014).  "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).  As shown above, Boohoo Parent is not incorporated and does not have its principal place of business in California. Catto Decl. ¶¶ 2-5.

Nor does the Court have specific jurisdiction over Boohoo Parent.[2]  Plaintiffs do not allege that Boohoo Parent purposefully directed its activity to California and that its claims are based on those forum-related activities.  Instead, Plaintiffs allege that Boohoo Parent's *subsidiaries* directed their activities to California.  This is insufficient to establish personal jurisdiction.  The Court must assess the contacts of each defendant separately to determine whether personal jurisdiction exists for each particular defendant.  *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003); *see also Skurkis v. Montelongo*, No. 16-cv-0972, 2016 WL 4719271, at *4 (N.D. Cal. Sept. 9, 2016) (holding plaintiffs have

---

[2] The Ninth Circuit applies a three-part test: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 741-42 (9th Cir. 2013) (internal citations and quotations omitted).  Once the plaintiff meets the burden of establishing the first two prongs, the burden then shifts to the defendant to "make a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Learjet*, 715 F.3d at 745.

not met their burden of establishing personal jurisdiction as to each defendant by "group[ing] all defendants together.")

### C. The Court Does Not Have Personal Jurisdiction over Boohoo Group PLC Based on an Alter Ego Theory

Plaintiffs' contention that Boohoo Parent is subject to personal jurisdiction in California violates a fundamental tenant of corporate law—a parent corporation is not legally responsible for the conduct of its subsidiaries under U.S. law. "[A] parent and subsidiary comprise two wholly separate entities . . . ." *United States v. Bennett*, 621 F.3d 1131, 1137 (9th Cir. 2010) (quoting 18A Am.Jur.2d Corporations § 632). "As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza*, 793 F.3d at 1070 (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

Plaintiffs allege that the Court has personal jurisdiction over Boohoo Parent based on its conclusory allegation that Boohoo Parent, the UK Defendants, and the US Defendants "operate as one big company to market and sell products throughout the U.S.," and that "[t]he 'subsidiaries' operated like divisions or departments." Hilton ¶ 7; Kahn SAC ¶ 7; Lee FAC ¶ 7. In *Daimler*, the Supreme Court rejected the "agency" theory of personal jurisdiction relied upon by Plaintiffs in this case, holding that it "sweeps too broadly to comport with the requirements of due process." *Ranza*, 793 F.3d at 1071; *see also Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1020-25 (9th Cir. 2017) ("the *Daimler* Court's criticism of the *Unocal* standard found fault with the [agency] standard's own internal logic, and therefore applies with equal force regardless of whether the standard is used to establish general or specific jurisdiction").

While *Ranza* acknowledged that the Supreme Court left intact the Ninth Circuit's stringent "alter ego" test for "imputed" general jurisdiction over a parent

MOTION TO DISMISS AND STRIKE

corporation, Plaintiffs' allegations do not meet that high standard.  *Ranza*, 793 F.3d at 1071.  To satisfy the alter ego test, a plaintiff must allege *with a sufficient factual basis* (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice.  *Unocal*, 248 F.3d at 926.  The "unity of interest and ownership" prong of this test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former."  *Id.* (citations and quotations omitted).  This test envisions *pervasive control* over the subsidiary, such as when a parent corporation "dictates *every facet* of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation."  *Id.* (citations and quotations omitted) (emphasis added).

Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.  *Harris*, 328 F.3d at 1135.  In *Harris*, the Ninth Circuit held that "100% control through stock ownership does not by itself make a subsidiary the alter ego of the parent." *Id.*  It also held that the parent is not the alter ego of the subsidiary based on the allegation that "the companies are run by the same senior officers and directors," and that "the two companies share the same offices in London, and some of the same staff." *Id.*  These are the same rejected alter ego allegations that Plaintiffs rely upon in this case.

*Ranza* is a post-*Daimler* case that is instructive.  It holds that the following allegations ***do not*** rise to the level of control necessary to impose alter ego liability: (1) involvement in its subsidiaries; acquisitions, divestments and capital expenditures; (2) formulation of general business policies and strategies applicable to its subsidiaries, including specialization  in particular areas of commerce; (3) provision of loans and other types of financing to subsidiaries; and (4) maintenance of overlapping directors and officers with its subsidiaries.  793 F.3d at 1073-74.

The allegations that Plaintiffs make in support of alter ego are the same allegations found insufficient in *Ranza*, which held that Nike and its wholly-owned subsidiary, NEON, were not alter egos, despite the fact that "Nike [was] heavily involved in NEON's operations," exercised control over NEON's overall budget and policies, operated a general information tracking system for all subsidiaries, and ensured the Nike brand was marketed consistently throughout the world.  *See id.* at 1174.

Plaintiffs' allegations do not satisfy the first prong of the alter ego test as a matter of law.  *See, e.g.*, *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983-84 (N.D. Cal. 2016) (rejecting alter ego theory where "separate corporate entities present[ed] themselves as one online" and noting that "it is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary" (quotation omitted)); *McGeachy v. Pinto Valley Mining Corp.*, No. 2:16-CV-03348 JWS, 2017 WL 3130639, at *5 (D. Ariz. July 24, 2017) (rejecting alter ego theory where subsidiary's documents used parent's name and logo; some officers and directors worked for both companies; parent's federal filings discussed unified business; parent's documents prescribed general practices and policies); *Pokemon Co. Int'l, Inc. v. Shopify, Inc.*, No. 16-MC-80272-KAW, 2017 WL 697520, at *4 (N.D. Cal. Feb. 22, 2017) (providing one office for two entities and shared principal officers and executives is inadequate to satisfy the alter ego test).  Because Plaintiffs have failed to plausibly allege that Boohoo Parent is liable for the actions of its subsidiaries, the Court should dismiss all claims against Boohoo Parent for lack of personal jurisdiction.

Boohoo Parent's subsidiaries maintain an independent corporate structure. Catto Decl. ¶ 23.  They are distinct business entities from Boohoo Parent, provide different types of services in different geographical regions, have maintained corporate formalities, have been adequately capitalized to meet their ongoing

MOTION TO DISMISS AND STRIKE

operational and financial obligations, have maintained separate bank accounts, have not commingled assets or funds with the assets or funds of Boohoo Parent, have maintained separate books and records, and have paid their own taxes if owed.  *Id.* ¶ 24.

Boohoo Parent has seven directors; it does not have additional officers or employees.  Catto Decl. ¶ 7.  Boohoo Group PLC has three sub-committees for audit, nomination, and remuneration.  *Id.*  Boohoo Group PLC directors perform the normal oversight duties expected of a listed holding company, including at least eight board meetings per year. *Id.*

Boohoo UK owns trademarks, enters into contracts in its own name, employs staff, operates information technology systems, and owns and leases real estate.  *Id.* ¶ 26.  PLT UK utilizes its own contracts, systems, and employees.  NG UK owns trademarks and operates the Nasty Gal websites.  *Id.*  The US Defendants have their own employees and assist in marketing.  *Id.* ¶ 27.  For these reasons, Boohoo Parent does not dictate every facet of the businesses of its subsidiaries, from broad policy decisions to routine matters of day-to-day operation.  *Id.* ¶ 25.

The Court should dismiss Boohoo Parent for lack of personal jurisdiction. *See Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1047-48 (N.D. Cal. 2018) (granting motion to dismiss:  "the plaintiffs' unsworn and conclusory allegations that WFMI shares office space, employees, and corporate control with its subsidiaries, sets policies for its subsidiaries, and indemnifies its subsidiaries—even if they were credited over the defendants' sworn declaration—do not establish that the various Whole Foods entities are alter egos"); *Apple Inc. v. Allan & Assocs. Ltd.*, No. 5:19-CV-8372-EJD, 2020 WL 1492665, at *5 (N.D. Cal. Mar. 27, 2020) ("Defendant Allan's sworn and unrebutted declaration establishes that AAL and A2 are (1) distinct business entities, (2) provide different types of services in different geographical regions, (3) do not share the same employees, (4) have always

maintained the appropriate corporate formalities, (5) have always been adequately capitalized to meet their ongoing operational and financial obligations, (6) have always maintained separate bank accounts and never commingled assets or funds, (7) have always maintained separate corporate records, and (8) have always paid their own expenses.  This evidence establishes that Defendants AAL, Allan, and A2 are not alter egos.") (internal citations omitted).

Plaintiffs' allegations also do not satisfy the second prong of the alter ego test, which addresses whether failure to disregard their separate identities would result in fraud or injustice.  *Unocal*, 248 F.3d at 926.  The UK Defendants operate the websites and have a separate corporate existence.  Plaintiffs do not plausibly allege facts showing that an "injustice" would occur if this Court were to limit these class actions about advertising on websites *to the operators of those websites*.

**D.  Plaintiffs Fail to Plausibly Allege Claims Against the US Defendants that Do Not Operate the Websites**

The Court should also dismiss all claims against Boohoo Parent and the US Defendants for failure to state a claim.  When ruling on a motion to dismiss, the Court may take judicial notice of the T&Cs of the websites.  *Patel v. Parnes*, 253 F.R.D. 531, 544 (C.D. Cal. 2008).  Here, the content of the U.S. websites are extensively referenced throughout the complaints.  *See, e.g.*, Hilton FAC ¶¶ 1, 13-22, 45-47, Kahn SAC ¶¶ 1, 13-22, 45-47 Lee FAC ¶¶ 1, 12-21, 44-46.

The T&Cs make clear that the websites are not operated by Boohoo Parent or the US Defendants, but instead are operated by the UK Defendants—Boohoo UK, PLT UK and NG UK.  For example, the US Boohoo.com website clearly states www.boohoo.com is "operated by Boohoo.com UK Limited ('We').  We are a company registered in England and Wales under company number 05723154 and with our registered office at 49/51 Dale Street, Manchester, England M1 2HF."  Shelton Decl. Exs. 1, 8 § 1.  The other two websites contain the same language as to

MOTION TO DISMISS AND STRIKE

PLT UK and NG UK.  *Id.* Exs. 2-3, 9-10 § 1.  The T&Cs also unambiguously state that Boohoo US, PLT US, and NG US are not parties to the sales contracts that customers enter when making online purchases.  *See id.* Exs. 1-3 § 4 (Section 4: "HOW THE CONTRACT IS FORMED BETWEEN YOU AND US").  While the UK Defendants are responsible for the content of their websites, their parent entity—Boohoo Parent—is not, and their downstream subsidiaries—the US Defendants—are not.  Because Plaintiffs fail to plausibly allege that Boohoo Parent and the US Defendants are liable for advertising on websites they do not operate, the Court should dismiss them from the action.

## II.   THE COURT SHOULD STRIKE THE NON-CALIFORNIA CLASS ALLEGATIONS

### A.   Legal Standard

Boohoo Parent and the US Defendants seek to strike all allegations related to the non-California class and products that Plaintiffs' did not purchase.  The Court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading.  Fed. R. Civ. P. 12(f).  With respect to class actions, the Supreme Court has acknowledged that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Where a "complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).  Rule 23(d)(1)(D) provides that, "the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043 (N.D. Cal. 2014).

**B.**     **The California Class Representatives Cannot Assert Claims on Behalf of Non-California Customers**

All three class representatives allege that they are California residents who purchased items delivered to them in California.  Hilton FAC ¶¶ 2, 21; Kahn SAC ¶¶ 2, 20; Lee FAC ¶¶ 2, 19.  There are no class representatives from any state outside of California.  Plaintiffs assert the same six claims in all three complaints.  The three statutory claims—for violation of the UCL, FAL, and CLRA—are expressly pleaded under California's consumer protection laws.  The three common law claims—for fraud, fraudulent concealment, and unjust enrichment—invoke California law because they seek recovery of attorney fees under a California statute.  No foreign law is pleaded in the complaints.  While all class representatives are California residents, and all pleaded claims are California claims, Plaintiffs purport to seek certification of a nationwide class on behalf of all U.S. customers.

Because Plaintiffs seek to assert *California* class claims on behalf of non-California customers, the Court should strike those class allegations because they violate the rule against extraterritorial application of California law and due process.  "California law embodies a presumption against the extraterritorial application of its statutes."  *Churchill Vill., LLC v. Gen. Elec. Co*., 169 F.Supp.2d 1119, 1126 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004).  In regard to California statutory consumer protection claims, non-California residents' claims are not supported "where none of the alleged misconduct or injuries occurred in California."  *Id.* (citing *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222 (1999).  This is because, "beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of non-residents' claims that lack a nexus with California raises significant due process problems."  *Id.* at 1126-27 (internal quotations omitted).

Applying this law, the court in *Koehler v. Litehouse, Inc*., No. CV 12-04055

SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) dismissed the class action allegations to the extent asserted on behalf of a nationwide class.  The *Koehler* court explained:  "Plaintiff's UCL, FAL, and CLRA claims, purportedly brought as a nationwide class action, would necessarily include purchases outside of California made by non-California residents.  These plaintiffs do not have the requisite contacts with California, and therefore violate the presumption against the extraterritorial application of California laws and raise significant due process issues."  *Id.* at 7.  This Court should reach the same conclusion.

To the extent Plaintiffs assert *non-California* class claims on behalf of non-California customers, the class representatives lack standing to assert claims under the laws of states in which they do not reside and have not purchased products. [3] *See Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020) ("California district courts frequently address the issue of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products."); *Morales v. Unilever U.S., Inc.*, Civ. No. 2:13-2213 WBS EFB, 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014) (holding that because the named plaintiffs were only residents of two states and did not purchase defendant's products in any state but their own they did "not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint.") (quoting *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (holding that "[a]t least one named plaintiff must have standing with respect to each claim the class representative seek to bring" and dismissing the claims made under the laws of twenty-four states where none of the

---

[3] Boohoo Parent and the US Defendants raise this issue in an abundance of caution in the event Plaintiffs argue their common law claims arise under the laws of states other than California.  The Court need not address the issue if Plaintiffs concede in their opposition that all claims are brought under California law.

MOTION TO DISMISS AND STRIKE

named plaintiffs resided or were alleged to have personally purchased the product); *Rael v. New York & Co., Inc*., No. 16-CV-369-BAS(JMA), 2016 WL 7655247, at *4 (S.D. Cal. Dec. 28, 2016) ("Although Plaintiff asserts claims under the consumer-protection laws of forty other states and the District of Columbia, no other plaintiffs are named in the SAC to represent claims from these states. Subsequently, Plaintiff lacks standing to bring consumer-protection claims in these forty states and District of Columbia, warranting dismissal of Plaintiff's fourth cause of action.") (internal citation omitted).

Additionally, in light of Ninth Circuit authority holding that non-California class claims must be based upon the law of each customers' state of residence, other courts in California have routinely struck nationwide class action allegations are not limited to California customers.  Under *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."  666 F.3d at 594.  For example, in, *Brandon Banks v. Nissan N. Am.*, Inc., No. C 11-2022 PJH, 2012 WL 8969415 (N.D. Cal. Mar. 20, 2012), the plaintiffs brought claims under the UCL and CLRA on behalf of a nationwide class of consumers who allegedly purchased defective vehicles.  The defendants moved to dismiss the complaint, arguing in part that the Court should strike the nationwide class allegations under *Mazza. Id.* at *1.  The Court agreed, holding that pursuant to *Mazza*, the plaintiffs "may continue to pursue their claims on behalf of a California class only." *Id.*; *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012) (dismissing plaintiff's UCL and CLRA claims under *Mazza* where alleged transactions occurred in Pennsylvania; holding that claims should be governed by Pennsylvania law); *Davison v. Kia Motors Am., Inc.*, No. SACV 15–00239–CJC(RNBx), 2015 WL 3970502, at *2 (C.D. Cal. June 29, 2015) (disposing of nationwide class allegations at the pleadings, noting "the

principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss."); *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) ("Multiple California district courts have applied *Mazza* at a motion to dismiss stage.") (citing cases); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal. 2018) (holding that "*Mazza* is not only relevant but controlling, even at the pleading stage," and concluding that "without named representatives from any other states, plaintiffs' nationwide class allegations must be DISMISSED"); *Perez v. Nidek*, 711 F.3d 1109, 1113-14 (9th Cir. 2013) (approving a court's consideration of standing before class certification).

## C.   The California Class Representatives Cannot Assert Claims on Behalf of Non-California Customers against Boohoo Parent or the US Defendants

The non-California class allegations against both Boohoo Parent and the US Defendants should be stricken for the reasons explained above.  The non-California class allegations against Boohoo Parent also should be stricken because "neither general nor specific jurisdiction exists over nationwide class suits except in the defendant's home states." 2 Newberg on Class Actions § 6.26, Personal Jurisdiction Over Defendants in Plaintiff Class Actions (5th ed. June 2018 update) (discussing *Bristol-Myers Squibb Co. v. Superior Court of Cal*, 137 S. Ct. 1773 (2017)).

Plaintiffs may not bring claims on behalf of persons outside of California against Boohoo Parent, which is a foreign entity and is not at "home" in California. As explained by the court in *Carpenter v. Petsmart, Inc.*, "the rationale for the holding in *Bristol-Myers Squibb* indicates that if and when the Supreme Court is presented with the question, it will also hold that a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual

claims."  441 F. Supp. 3d at 1035.  The Ninth Circuit has not yet addressed this issue, and other courts in the Ninth Circuit have agreed with the *Petsmart* analysis. *See Pilgrim v. Gen. Motors Co.*, 408 F. Supp. 3d 1160, 1168 (C.D. Cal. 2019) ("Accordingly, because there is no basis for the Court to constitutionally exercise personal jurisdiction over the forty out-of-state named Plaintiffs' claims against GM that arise entirely from out-of-state activities that have no connection to California, those claims are dismissed and because amendment is futile, those claims are dismissed without leave to amend.")  This Court should do the same and dismiss the non-California class action allegations against Boohoo Parent.

## III.   THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM

### A.   The Court Should Dismiss All Claims for Lack of Standing

Plaintiffs purport to assert class claims based on every product sold in the United States on three websites over a four-year period.  It is well established that Plaintiffs lack standing to pursue a claims for products that they did not purchase and advertising they did not see.  *See Leonhart v. Nature's Path Foods, Inc.*, No. 13-0492, 2014 WL 1338161, at *4 (N.D. Cal. Mar. 31, 2014) (UCL, FAL, and Article III); *Wilson v. Frito-Lay N.A., Inc.*, 961 F. Supp. 2d 1134, 1140-41 (N.D. Cal. 2013) (Article III); *Ivie v. Kraft Foods Global, Inc.*, No. 12-02554, 2013 WL 685372, at *5 (N.D. Cal. Feb. 25, 2013) (UCL, FAL, CLRA, and Article III); *Larsen v. Trader Joe's Co.*, No. 11-06188, 2012 WL 5458396, at *4-5 (N.D. Cal. June 14, 2012) (Article III); *Johns v. Bayer Corp.*, No. 09-1935, 2010 WL 476688, at *4-5 (S.D. Cal. Feb. 9, 2010) (UCL and CLRA).  For example, in *Johns v Bayer*, the court held that "[Plaintiff] cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon.  The statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegation."  2010 WL 476688, at *5.

1   Even as to the few products that Plaintiffs did purchase, Plaintiffs lack
2   standing because they do not plausibly allege that they suffered any damages, *i.e.*,
3   that the price they paid was more than the value received.  *See Chowning v. Kohl's*
4   *Dep't Stores, Inc.*, 733 F. App'x 404, 405 (9th Cir. 2018) (holding that in reference
5   price false advertising cases, "[t]he proper calculation of restitution in this case is
6   price paid versus value received").  Standing under the UCL and FAL requires
7   plaintiffs to "ha[ve] suffered injury in fact and ha[ve] lost money or property as a
8   result of the unfair competition."  Cal. Bus. & Prof. Code §§ 17204 (UCL), 17535
9   (materially identical standard under the FAL).

10  The prices that Plaintiffs paid for the items purchased from the websites range
11  from a *high* of $24 (for Lee's shoes) (Lee FAC ¶ 19) to a *low* of $6 (for Kahn's t-
12  shirts) (Kahn FAC ¶ 20).  Plaintiffs do not plausibly allege that they suffered *any*
13  out-of-pocket loss when they paid these rock-bottom prices for items that were
14  admittedly delivered to them, as represented.  While the Ninth Circuit has held that
15  standing can exist in false advertising / reference price cases, the plaintiff must still
16  allege sufficient facts to show some form of economic injury.  *Hinojos v. Kohl's*
17  *Corp.*, 718 F.3d 1098, 1103-04 (9th Cir. 2013).  Based on the allegations in the three
18  complaints, Plaintiffs have failed to do so.

19  **B.    The Court Should Dismiss the CLRA Claims because the Pre-Suit**
20  **Notices Were Deficient**

21  The Court should dismiss the CLRA claims because Plaintiffs failed to meet
22  the pre-suit notice requirement to proceed with claims under the CLRA.  Cal. Civ.
23  Code § 1782.  Under the statute, a plaintiff must notify the prospective defendant
24  "of the particular alleged violations of" the CLRA and must "[d]emand that the
25  person correct, repair, replace, or otherwise rectify *the goods or services alleged to*
26  *be in violation of*" the CLRA.  *Id.* § 1782(a) (emphasis added).  Courts must apply
27  the notice provision literally.  *Sotelo v. Rawlings Sporting Goods Co., Inc.*, 2019

WL 4392528 (C.D. Cal. May 8, 2019).  Even "actual notice" does not excuse a plaintiff from complying with Section 1782.  *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009).

The June 24, 2020 CLRA notices sent to Defendants only discuss the alleged violations in the most abstract of terms, without *any description* of the *specific transactions* that are the basis of the class representatives' claims.  Shelton Decl. Ex. 6.  For example, in Kahn's notice, his counsel writes that Kahn is "a customer of yours who purchased items from your website (https://us.boohoo.com) on or about April 27, 2019."  *Id.* at 1.  Ms. Hilton and Ms. Lee's notice contain the same vague language.  *Id.* at 5, 9.  The notices do not contain any description regarding what items were purchased.  They do not give any detail that would allow Defendants to make an investigation into specific claims and provide a remedy.  Rather, the notices make broad accusations that "on a typical day, Boohoo prominently displays . . . some form of a sale where all products or a select grouping of products are supposedly marked down by a specified percentage."  *Id.* at 2, 6, 10.  Plaintiffs did not give notice of "particular alleged violations" and an opportunity cure.  In *Bruce v. Harley-Davidson, Inc.*, the district court found a CLRA notice letter defective where it alerted the defendant of only some violations but not others. No. CV 09-6588 CAS, 2010 WL 3521775, *7 (C.D. Cal. Jan. 15, 2010).  Given the deficient notices, the Court should dismiss all CLRA claims.

**C.    The Court Should Dismiss All Claims for Failure to Satisfy Federal Rule of Civil Procedure 9(b)**

Because all six of the statutory and common law claims sound in fraud, Plaintiffs must satisfy a "heightened" pleading standard that must "state with particularity the circumstances surrounding fraud."  Fed. R. Civ. P. 9(b).  This means the Plaintiffs must set forth the "who, what, where, and how" of the fraud alleged.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  The

heightened pleading standard applies to all claims based on the same alleged "fraudulent" representations, including those under the CLRA and UCL. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

California courts have held that virtually identical allegations of "fraudulent" reference pricing fail to satisfy the requirements of Rule 9(b). In *Rael v. New York & Company*, the plaintiff alleged that she had purchased shoes for $16.17—advertised as being 70% off the "Market" price of $49.94—at the defendant's retail store in an outlet mall. 2016 WL 7655247 at *1. She claimed that the pricing was false and misleading because the $49.94 price had not been the prevailing retail price for the shoes during the three months immediately prior to her purchase. *Id.* at *2. Further, she would not have purchased the shoes absent these misrepresentations. *Id.* The *Rael* court concluded that the plaintiff failed to meet Rule 9(b)'s pleading standards because she did "not provide any facts that demonstrate why or how the original retail price of $49.94 [wa]s false" beyond her allegation that the shoes she had purchased were not sold at the $49.94 price in the three months before her purchase. *Id.* at *6. This is the same theory—and the same allegations—advanced by Plaintiffs here.

Similarly, in *Schertzer v. Samsonite Co. Stores, LLC*, No. 19-CV-639 JLS (MSB), 2020 WL 4281990 (S.D. Cal. Feb. 25, 2020), the plaintiff visited an outlet store and purchased a suitcase for $167.99. *Id.* at *1. Samsonite advertised the Suitcase as having an "OUR PRICE" of approximately $280.00, while in-store signage advertised the Suitcase as on sale ('Take 40% off OUR PRICE') and set forth a pricing chart advertising the Suitcase as having a regular 'OUR PRICE' of $280.00 and a 40% sale price of $167.99." *Id.* Citing favorably to *Rael*, the *Schertzer* court held that plaintiff's complaint fails to allege facts sufficient to illustrate how Samsonite's "'OUR PRICE' and 'Now' pricing is false or misleading as required under Rule 9(b) for each of Plaintiff's causes of action." *Id.* at *5. This

Court should dismiss all claims on the same basis.[4]

### D.   The Court Should Dismiss the Fraudulent Concealment Claims

All three Plaintiffs assert claims for fraudulent concealment under California law.  Plaintiffs fail to plead necessary elements of the claim.  Parties engaged in an arm's length business transaction do not have a duty to disclose absent a "fiduciary or other similar relationship of trust and confidence."  *GCN Prod., Inc. v. O'Young*, 22 F. App'x 772, 774 (9th Cir. 2001) (citations and quotations omitted).  A cause of action for fraudulent concealment requires an allegation that the defendant owed a duty to disclose the concealed fact.  *Levine v. Blue Shield of Cal.*, 189 Cal.App.4th 1117, 1126–27 (2010).  "Where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose."  *Philo v. Liminova, Inc.*, No. 13CV113-AJB WVG, 2013 WL 1628153, at *3 (S.D. Cal. Apr. 15, 2013).  Because Plaintiffs have failed to sufficiently plead the existence of such a relationship or duty, the Court should dismiss the fraudulent concealment claim. *See id.* (granting motion to dismiss fraudulent concealment claim for this reason).

### E.   The Court Should Dismiss the Unjust Enrichment Claims

Plaintiff asserts that Defendants were "unjustly enriched" by their purchases because they spent "money that they otherwise not have . . . and/or spend more

---

[4] All of Defendants common law claims fail, and cannot proceed on a class basis, because the fraud claims require individualized showings of reliance, and the unjust enrichment claims require an individualized showing of receipt of a benefit.  *See Pirozzi v. Apple, Inc*., 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013) ("Fraud under the UCL requires different elements than common law fraud."); *Quezada v. Loan Ctr. of California, Inc.*, No. CIV. 2:0800177WBSKJM, 2009 WL 5113506, at *8 (E.D. Cal. Dec. 18, 2009) ("The extent of each class member's reliance on the representations in the loan documents will be critical to determine whether the reliance and causation elements of the fraud claim are satisfied.").

MOTION TO DISMISS AND STRIKE

money" for items than they otherwise would have. Lee FAC ¶ 140; Kahn SAC ¶ 130; Hilton FAC ¶ 127.  This claim should be dismissed for at least three reasons.

First, the remedy for unjust enrichment is restitution, but this relief cannot be awarded without a showing of fraud or wrongdoing.  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009).  As such, the unjust enrichment claim fails with the other claims.  *See, e.g., Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) ("[W]hen a plaintiff fails 'to sufficiently plead an actionable misrepresentation or omission, his [or her] restitution claim must be dismissed.'").

Second, "[t]o allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense."  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  Here, Plaintiffs do not plausibly allege these elements.  They do not allege that Defendants "unjustly" received any "benefit," that Defendants "unjustly" retained any "benefit," or that Plaintiffs were harmed by their transactions with Defendants.  The Court should dismiss the unjust enrichment claim because Plaintiffs do not plausibly alleged they paid more than the fair market value of the items purchased.  *See Rheem Mfg. Co. v. U.S.*, 57 Cal. 2d 621, 626 (1962) ("The judgment cannot be sustained on the theory of unjust enrichment.  The only finding that relates to the matter, namely, that Rheem paid the fair market value of the property at the trustee's sale, tends to show that there was no unjust enrichment."); *CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. 12-10876-CAS, 2013 WL 1249021, at *5 (C.D. Cal. Mar. 25, 2013) (dismissing unjust enrichment claim because "plaintiff does not allege what benefit, if any, plaintiff conferred upon [the defendant] such that restitution would be appropriate").

Finally, where the underlying claims all sound in fraud, the unjust enrichment claim must meet the heightened pleading requirements of Rule 9(b).  *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *10

(N.D. Cal. Jan. 4, 2018) ("However, because the unjust enrichment/quasi-contract claim is based on the same allegedly misleading advertisements upon which Plaintiffs' UCL, FAL, and CLRA claims are based . . . the unjust enrichment/quasi-contract claim also sounds in fraud and is subject to Rule 9(b)'s heightened pleading requirements.") (*citing Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) (unpublished) (applying Rule 9(b) to unjust enrichment claim based on fraud). Because Plaintiffs fail to satisfy Rule 9(b), their unjust enrichment claims should be dismissed.

## CONCLUSION

The Court should grant the present motion to dismiss and strike.

DATED:   September 4, 2020        EVERSHEDS SUTHERLAND (US) LLP


                                 By */s/ Ian S. Shelton*
                                 Ian S. Shelton

                                 Attorneys for Defendants Boohoo Group
                                 PLC, Boohoo.com USA Inc.,
                                 Prettylittlething.com USA Inc., and
                                 Nastygal.com USA Inc.

MOTION TO DISMISS AND STRIKE